**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **STACEY JACKSON** | * | |
| **Plaintiff,** | * | **Civil Case No.: SAG-25-00492** |
| **v.** | * | |
| **VALERIE E. BROWN, *et al.*** | * | |
| **Defendants.** | * | |

* * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiff Stacey Jackson ("Plaintiff") brings this action against Valerie E. Brown, Eric Hemmendinger, and Lindsey White (collectively, "the Outside Counsel Defendants"); as well as Exelon Business Services Company, LLC; Exelon Corporation; and Baltimore Gas and Electric Company (collectively, "the Exelon Companies"); and Clifford Glover (together with the Exelon Companies, "the Exelon Defendants," and all together "Defendants") for claims arising out of alleged employment-related retaliation. ECF 1. The Outside Counsel Defendants jointly filed a motion to dismiss Plaintiff's complaint, ECF 25, and the Exelon Defendants jointly filed a motion to dismiss the complaint, ECF 28. Then, instead of opposing those motions, Plaintiff filed an amended complaint without seeking Defendants' consent or this Court's leave. ECF 29. The Exelon Defendants then jointly filed a motion to strike, or in the alternative, to dismiss Plaintiff's amended complaint. ECF 38. The Outside Counsel Defendants also jointly filed a motion to strike, or in the alternative, to dismiss the amended complaint, ECF 39, which they then supplemented, ECF 42. Plaintiff opposed these motions, ECF 45, 49, 50, and Defendants filed replies, ECF 46, 55, 56. This Court has reviewed the filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons explained below, this Court will deny as moot the first set of

motions to dismiss, grant the Outside Counsel Defendants' motion to dismiss the amended complaint, and grant in part and deny in part the Exelon Defendants' motion to dismiss the amended complaint.

## I. BACKGROUND

The following facts are derived from Plaintiff's amended complaint, ECF 29, and are assumed to be true for purposes of these motions.

Plaintiff was an employee of the Exelon Companies from 2019 until 2022. *Id.* ¶¶ 3, 21–22. Throughout her employment with the Exelon Companies, she witnessed and experienced race-based disparate treatment and harassment. *Id.* ¶ 30. Because of the discrimination and harassment, she developed several health conditions that led her to resign in 2022. *Id.* ¶ 37.

Following her resignation, Plaintiff retained attorneys Tonya Baña and Jonathan Gross to represent her in connection with potential claims against the Exelon Companies arising out of her employment. *Id.* ¶ 41. Plaintiff subsequently filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") against the Exelon Companies. *Id.* ¶ 42. Plaintiff and the Exelon Companies later resolved her potential claims by entering into a confidential settlement agreement. *Id.* ¶ 43. The settlement agreement recognized that cases related to Plaintiff's employment may arise and required Plaintiff "to cooperate in providing the company documents and information necessary to assist in the defense or prosecution of any such case, including telephone calls and meetings with the Company's counsel." *Id.* ¶ 44. The Exelon Companies must compensate Plaintiff for any time spent "assisting in the defense or prosecution of any such case." *Id.*

In September, 2023, Plaintiff was served with a subpoena to attend a deposition in *Kevin Alston, et al. v. Baltimore Gas & Electric Co., et al.*, a discrimination case filed by former

employees against the Exelon Companies. *Id.* ¶ 45. Approximately one week later, William Kennedy, an attorney who represents an Exelon subsidiary in *Robert Montgomery v. Atlantic City Electric Co., et al.*, a wrongful discharge case, contacted Plaintiff. *Id.* ¶ 46. He informed her that the plaintiff's attorney in that case had requested to take her deposition and that he "would like to work with her to prepare for and attend the deposition." *Id.* Shortly thereafter, Plaintiff met with Mr. Kennedy and an associate, Mr. Kennedy provided her with documents to review before her deposition, and Plaintiff directed Mr. Kennedy to where he could locate other documents relevant to the case. *Id.* ¶ 47.

On September 21, 2023, Plaintiff was deposed in *Alston*. *Id.* ¶ 48. Ms. Baña, as counsel for the *Alston* plaintiffs, conducted the deposition, and Mr. Gross represented Plaintiff during it. *Id.* Ms. White, outside counsel for the Exelon Companies, and Mr. Glover, Assistant General Counsel for Labor & Employment, represented the Exelon Companies. *Id.* ¶¶ 6–7, 48. Before beginning questioning, Ms. Baña made a statement on the record that she had previously represented Plaintiff and had a continuing obligation to maintain the confidentiality of her attorney-client communications with Plaintiff. *Id.* ¶ 49. During the deposition, Plaintiff asserted the attorney-client privilege to decline to answer questions that would require her to reveal her communications with Ms. Baña, and she complied with Ms. White's instructions to refrain from answering questions that would require her to reveal privileged information of the Exelon Companies. *Id.* ¶¶ 50, 52. Plaintiff's testimony during the deposition largely corroborated the *Alston* plaintiffs' discrimination claims, and Plaintiff testified specifically about both investigations that she had conducted as an employee and discrimination and retaliation that she had experienced personally. *Id.* ¶¶ 53–54.

Following Plaintiff's deposition, Ms. White had several communications, including through a November, 2023 email, with Mr. Gross inquiring about the scope of the Exelon Companies' privileged information that Plaintiff may have disclosed in her communications with Ms. Baña. *Id.* ¶¶ 55–56. The following month, the Exelon Companies filed a motion to disqualify Ms. Baña from representing the *Alston* plaintiffs based on Plaintiff's purported disclosure to her of the Exelon Companies' privileged information. *Id.* ¶ 57.

Around this same time, Plaintiff made a demand for payment for her time spent assisting Mr. Kennedy in the *Montgomery* matter. *Id.* ¶ 59. Mr. Kennedy informed her that the Exelon Companies refused to pay her until after she was deposed and would not pay her if the *Montgomery* plaintiff had to issue a subpoena for her deposition. *Id.* ¶¶ 60–61. The settlement agreement does not provide for such preconditions for payment. *Id.* ¶ 62.

In February, 2024, Ms. Brown, as outside counsel for the Exelon Companies, sent Mr. Gross a letter alleging that Plaintiff had improperly retained the Exelon Companies' documents by forwarding them to her personal email accounts and had lied in connection with doing so during her *Alston* deposition. *Id.* ¶¶ 4, 63–69. The letter requested that Plaintiff permit access to her personal electronic devices. *Id.* ¶ 69. Later that month, the Exelon Companies filed a reply in *Alston* as well as correspondence with the court in another matter, alleging that Plaintiff had improperly retained and disclosed privileged information. *Id.* ¶¶ 77, 81. The Exelon Companies later retracted these allegations in the other matter. *Id.* ¶ 80.

In March, 2024, Ms. White had a letter and a subpoena to testify and produce documents in *Alston* served upon Plaintiff personally. *Id.* ¶ 86. The following month, the Exelon Companies filed several papers in *Alston* alleging that Plaintiff had improperly retained privileged documents. *Id.* ¶ 89.

Plaintiff retained Ms. Baña to represent her during her deposition in the *Montgomery* matter. *Id.* ¶ 93. In June, 2024, Mr. Kennedy filed a motion to disqualify Ms. Baña from doing so, which the *Montgomery* Court denied. *Id.* ¶¶ 95, 97. Plaintiff's deposition in *Montgomery* eventually occurred in September, 2024, after which Plaintiff invoiced the Exelon Companies for all of the time that she had spent on the case. *Id.* ¶¶ 97–98. The Exelon Companies paid her for her time spent preparing for her deposition but refused to pay her for her time spent attending the deposition. *Id.* ¶ 99.

The Exelon Companies eventually subpoenaed Plaintiff to testify regarding her communications with Ms. Baña in *Alston*. *Id.* ¶ 101. Plaintiff's current counsel filed an appeal regarding that matter, and in July, 2024, the Exelon Companies filed a motion to disqualify Plaintiff's current counsel, which was denied. *Id.* ¶¶ 100–03. This Court takes judicial notice of the decision in that case, *Stacey Jackson, et al. v. Baltimore Gas & Electric Co., et al.*, by the Circuit Court for Baltimore City, ECF 25-8, and the Appellate Court of Maryland's decision affirming it, ECF 42-1. There, the court ordered an evidentiary hearing and permitted the Exelon Companies to subpoena Plaintiff and Ms. Baña to testify regarding any disclosure of confidential information. ECF 25-8; ECF 42-1.

In July, 2024, Plaintiff filed a second charge of discrimination with the EEOC against the Exelon Companies. *Id.* ¶ 104. The following month, Ms. White sent Ms. Baña a letter regarding the new charge and reiterated that the Exelon Companies perceived her representation of Plaintiff as improper. *Id.* ¶ 105. Then in September, 2024, the Exelon Companies filed a position statement in response to the charge that included allegations that Plaintiff had improperly retained privileged information. *Id.* ¶ 106.

Plaintiff brings four claims in this action. In Count I, she alleges a Title VII retaliation claim against the Exelon Companies. *Id.* ¶¶ 108–14. In Count II, she alleges a Maryland Fair Employment Practices Act retaliation claim against all Defendants. *Id.* ¶¶ 115–21. In Count III, she alleges a retaliation claim pursuant to 42 U.S.C. § 1981 against all Defendants. *Id.* ¶¶ 122–28. Finally, in Count IV, she alleges a conspiracy claim pursuant to 42 U.S.C. § 1985 against the Outside Counsel Defendants and Mr. Glover. *Id.* ¶¶ 129–33. She alleges this final claim in the alternative, if this Court were to find that the conduct of the Outside Counsel Defendants and Mr. Glover cannot be imputed to the Exelon Companies. *Id.* ¶ 130.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 15 permits a plaintiff to amend its pleading once as of right within twenty-one days of service of a motion to dismiss. Fed. R. Civ. P. 15(1)(b). A party seeking to amend its pleading after twenty-one days following service may do so "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). However, the Rule requires courts to "freely give leave when justice so requires." *Id.* The Fourth Circuit's policy is "to liberally allow amendment." *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010). Accordingly, leave to amend should be denied only if "prejudice, bad faith, or futility" is present. *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509–10 (4th Cir. 1986). Ultimately, the decision to grant leave to amend rests in this Court's discretion. *Foman v. Davis*, 371 U.S. 178, 182 (1962). As the Fourth Circuit has stated, a proposed amendment is futile when it "is clearly insufficient or frivolous on its face." *Johnson*, 785 F.2d at 510.

A defendant is permitted to test the legal sufficiency of a complaint by way of a motion to dismiss. *See, e.g.*, *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). A Rule 12(b)(6) motion constitutes an assertion by a

defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). But if a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555.

## III.  DISCUSSION

### A. Motions to Strike the Amended Complaint

Defendants first argue that the amended complaint must be stricken because it was untimely. As noted above, Plaintiff had twenty-one days following service of a motion to dismiss to file an amended complaint as of right. The first motion to dismiss her original complaint was filed on July 30, 2025, ECF 25, but Plaintiff filed her amended complaint, without Defendants' consent or this Court's leave, more than twenty-one days later on September 15, 2025, ECF 29. Plaintiff argues that this Court's order setting a September 15, 2025 deadline for her to file "Response Briefing," ECF 18, extended the deadline to amend as of right to that date. As Defendants correctly note, however, "Briefing," or argument, differs from a pleading, such as an

amended complaint. *See* Fed. R. Civ. P. 15(a) (defining "pleadings"). Rule 15 therefore did not permit Plaintiff to file her amended complaint.

This Court is not persuaded, however, that striking the amended complaint at this point would serve any purpose other than needless delay. If Plaintiff had properly styled her amended complaint as a motion for leave to file an amended complaint, this Court would have had to apply the Fourth Circuit's policy to liberally allow amendment absent prejudice, bad faith, or futility. Now that Plaintiff and both sets of Defendants have filed briefing regarding the merits of the amended complaint, this Court perceives no reason to strike the amended complaint and require all parties to file what would likely be nearly identical briefing in response to a motion for leave to file an amended complaint. Accordingly, although this Court does not condone the improper filing of the amended complaint, in the interests of judicial economy, it will deny Defendants' motions to strike the amended complaint as untimely or futile and will address their alternative motions to dismiss it on its merits.

**B. Rule 12(b)(6) Motions**

Defendants contend that Plaintiff has failed to plausibly allege any of her retaliation claims. A Title VII retaliation claim requires a plaintiff to show that (1) she engaged in protected activity, (2) her employer took an adverse employment action against her, and (3) a causal link between those two events exists. *Savage v. Maryland*, 896 F.3d 260, 276 (4th Cir. 2018). These elements are "identical" to the elements of a § 1981 retaliation claim, *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 217 (4th Cir. 2016), and the elements of a Maryland Fair Employment Practices Act retaliation claim, *Campbell v. Becton, Dickinson & Co.*, Civ. No. 1:22-cv-03043-ELH, 2024 WL 1299354, at *32 (D. Md. Mar. 27, 2024). This Court will therefore analyze all three claims together. Defendants do not dispute that Plaintiff engaged in protected activity by

testifying about discrimination in the workplace during her deposition in *Alston*, but they contend that she has failed to allege the second and third elements, which this Court will address in turn.

**1. Adverse Action for Retaliation Claims**

Defendants first argue that the Exelon Companies did not take any adverse employment action against Plaintiff because none of the conduct described in the complaint relates to Plaintiff's employment. The Supreme Court has rejected such a limitation. In *Burlington N. & Santa Fe Ry. Co. v. White*, the Court concluded that the antiretaliation provision of Title VII extends beyond harms "that are related to employment or occur at the workplace." 548 U.S. 53, 57 (2006); *see also Strothers v. City of Laurel*, 895 F.3d 317, 327 n.3 (4th Cir. 2018) (adopting an "adverse action," rather than "adverse employment action," formulation of the test "because the adverse action need not be employment- or workplace-related"). Indeed, the Court favorably cited cases involving an employer's refusal, contrary to policy, to investigate threats from outside the workplace against an employee and his wife, *see Rochon v. Gonzales*, 438 F.3d 1211 (D.C. Cir. 2006), and an employer's filing of false criminal charges against a former employee, *see Berry v. Stevinson Chevrolet*, 74 F.3d 980 (10th Cir. 1996). *Burlington*, 548 U.S. at 64–65. In place of the employment-related limitation, the Court adopted the requirement that employer actions "be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 57.

Notwithstanding this broader rule, Defendants note that some courts have carved out an exception for litigation-related conduct. *See, e.g.*, *United States v. N.Y.C. Transit Auth.*, 97 F.3d 672, 677 (2d Cir. 1996) ("Reasonable defensive measures do not violate the anti-retaliation provisions of Title VII, even though such steps are adverse . . . ."); *Steffes v. Stepan Co.*, 144 F.3d 1070, 1075 (7th Cir. 1998) (explaining that court rules exist to regulate improper litigation conduct

such that "it will be the rare case in which conduct occurring within the scope of litigation constitutes retaliation prohibited by [Title VII and related] statutes."). This Court finds this reasoning persuasive. Accordingly, although this Court rejects Defendants' argument that any adverse action must be employment-related, it will not consider any litigation-related conduct.

Much of the conduct described in the complaint allegedly occurred within the scope of litigation. Specifically, almost all of it involves lawyers for the Exelon Companies investigating Plaintiff's purported retention and disclosure of privileged information to Ms. Baña, corresponding with Plaintiff's counsel about it, and filing papers related to it in court or before the EEOC. The December, 2023 and June, 2024 motions to disqualify Ms. Baña and the July, 2024 motion to disqualify Plaintiff's current counsel on the same basis, the February, 2024 filings regarding the purported sharing of privileged information, the April, 2024 filings regarding the purported retention of privileged information, and the September, 2024 position statement before the EEOC all constitute standard litigation materials. Furthermore, the November, 2023 letter to Mr. Gross inquiring about the scope of disclosure of privileged information and the February, 2024 letter to him requesting that Plaintiff permit access to her personal electronic devices represented attempts by lawyers for the Exelon Companies to investigate the purported retention and disclosure of privileged information through standard correspondence with Plaintiff's counsel. The August, 2024 letter to Ms. Baña, relating to Plaintiff's EEOC charge and Ms. Baña's representation of Plaintiff given the purported sharing of privileged information, similarly constituted standard correspondence between counsel.

This Court perceives all of this conduct as conduct within the scope of litigation. Plaintiff contends that the conduct was improper because Defendants' assertions regarding the privileged information are baseless and because they investigated the issue through improper means.

Impropriety, even if true, however, would not bring the conduct within the scope of the relevant antiretaliation provisions. As noted above, even improper litigation conduct, such as "oppressive discovery requests and the withholding of other evidence . . . [are] matter[s] to be resolved pursuant to court rules, not by Title VII." *Steffes*, 144 F.3d at 1076 (quoting *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 486 (7th Cir. 1996)). Furthermore, this Court takes judicial notice of the decisions by the Circuit Court for Baltimore City and the Appellate Court of Maryland to order an evidentiary hearing and permit the Exelon Companies to subpoena Plaintiff and Ms. Baña to testify regarding any disclosure of confidential information. This Court expresses no view on the merits of Defendants' assertions that Plaintiff improperly retained and disclosed privileged information, but the state court decisions provide some evidence that Defendants' actions in litigating this issue were at least not frivolous. Ultimately, this Court discerns nothing about the alleged litigation-related conduct that was so far out of bounds as to make this "the rare case" in which such conduct supports a Title VII or related antiretaliation claim.

Plaintiff also alleges that Defendants retaliated against her by breaching the terms of the settlement agreement to compensate her for her time assisting the Exelon Companies in defending and prosecuting cases related to her employment. Specifically, Plaintiff alleges that the Exelon Companies refused to pay her for her time preparing for her deposition in *Montgomery* until after the deposition and would not pay her if the plaintiff in that case had to issue a subpoena for her, even though the settlement agreement provides for neither as a precondition of payment. She further alleges that the Exelon Companies never compensated her for her time spent attending the *Montgomery* deposition.

Although this conduct was litigation-related in the formal sense that it pertained to Plaintiff's depositions, it had no bearing on any strategic decision by counsel regarding how to

defend a client, like those involved in how and whether to investigate, file motions, and correspond with Plaintiff's counsel. Furthermore, this conduct was governed not by court rules, but by the provisions of the settlement agreement. These allegations essentially amount to an alleged breach of contract, rather than improper litigation tactics. Accordingly, this Court concludes that this conduct does not fall within the litigation-related conduct exception. Furthermore, the prospect of losing contractually obligated payment "could well dissuade a reasonable worker from making or supporting a charge of discrimination." This conduct therefore constitutes adverse action.

The contours of Plaintiff's final allegation, that Ms. White improperly sent Plaintiff a letter through personal service, rather than corresponding with Plaintiff's counsel, are less clear. The complaint does not describe the contents of this letter, but it may have related to a subpoena to testify and produce documents in *Alston* that was served on Plaintiff simultaneously. Plaintiff appears to suggest that this conduct violated the ethical obligation of counsel to refrain from communicating about a matter directly with a person otherwise represented in that matter. *See* Md. Rules Attorneys, Rule 19-304.2. Based on the limited information in the complaint regarding this allegation, this Court cannot adequately assess it. However, this Court will assume without deciding that this conduct satisfies the adverse action element because it is clear that Plaintiff has not established a causal link between it and any protected activity, as addressed below.

**2. Causation for Retaliation Claims**

Temporal proximity alone suffices to establish causation at the prima facie stage. *Strothers*, 895 F.3d at 336–37. Absent other evidence of causation, however, courts generally consider adverse actions more than two months removed from protected activity to be too remote. *Barnhill v. Bondi*, 138 F.4th 123, 132 (4th Cir. 2025). Ms. White allegedly sent the unspecified letter to Plaintiff personally in March, 2024, approximately six months after Plaintiff's protected deposition

testimony. Furthermore, the complaint contains no other facts suggesting a causal link between her deposition testimony and the decision to send a letter to Plaintiff personally, rather than to her counsel. Accordingly, Plaintiff has failed to sufficiently allege a causal connection between the personal service and her protected activity.

Plaintiff has sufficiently alleged causation, however, regarding her compensation-related allegations. The complaint does not allege precisely when Mr. Kennedy informed Plaintiff that she would not be compensated for her time preparing for the *Montgomery* deposition until after the deposition, but it generally indicates that this conduct occurred in early December, 2024, approximately two-and-a-half months after Plaintiff's *Alston* deposition. Although this conduct allegedly occurred slightly more than two months after Plaintiff's protected activity, this Court concludes that, drawing all reasonable inferences in Plaintiff's favor, she has presented sufficient other evidence of a causal link. Plaintiff's allegations raise a reasonable inference that following her testimony about workplace discrimination during her *Alston* deposition, the Exelon Companies used the delay in payment as an implied threat that if she testified similarly in her *Montgomery* deposition, she would not receive payment. She ultimately did not receive payment for her time spent attending her *Montgomery* deposition. Accordingly, Plaintiff has stated plausible Title VII retaliation, § 1981 retaliation, and Maryland Fair Employment Practices Act retaliation claims against the Exelon Companies based on their alleged conduct relating to her compensation under the settlement agreement.

Because Plaintiff does not allege that Mr. Glover or any of the Outside Counsel Defendants participated in the conduct relating to compensation under the settlement agreement, and all of Plaintiff's other allegations fail to support her retaliation claims, Plaintiff has failed to state any retaliation claims against Mr. Glover or any of the Outside Counsel Defendants.

**3. Section 1985 Conspiracy Claim**

Finally, Defendants argue that Plaintiff has failed to allege a conspiracy to deprive her of her rights under 42 U.S.C. § 1985(3). To allege a § 1985(3) conspiracy, a plaintiff must satisfy a "relatively stringent standard." *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995). Specifically, a plaintiff must prove five elements:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*Id.* at 1376. To survive a motion to dismiss a § 1985(3) conspiracy claim, a plaintiff must allege unlawful intent with "specific facts in a nonconclusory fashion." *Id.* at 1377 (quoting *Gooden v. Howard County*, 954 F.2d 960, 969–70 (4th Cir. 1992)).

Plaintiff has failed to plead specific facts to support this claim. Specifically, she has pled no facts from which this Court can infer discriminatory animus. Plaintiff's original complaint included a claim of discrimination under § 1981 and allegations that Defendants' conduct was motivated by racial discrimination. *See* ECF 1 ¶¶ 104–07. Plaintiff removed that claim in her amended complaint. *See* ECF 29 ¶¶ 122–28. The amended complaint's only reference to any discriminatory motivation is a conclusory allegation that Mr. Glover and the Outside Counsel Defendants "conspired to violate Ms. Jackson's federal rights to be free from discrimination and retaliation in employment and contracting based on race." *Id.* ¶ 131. This conclusory assertion, supported by no specific facts suggesting motivation based on racial animus, fails to plausibly allege a § 1985(3) conspiracy claim. Accordingly, this Court will dismiss Count IV.

## IV. CONCLUSION

For the reasons stated above, the Exelon Defendants' motion to dismiss, ECF 38, will be granted as to Mr. Glover and denied as to the Exelon Companies. The Outside Counsel Defendants' motion to dismiss, ECF 39, will be granted. Defendants' motions to dismiss the original complaint, ECF 25, 28, will be denied as moot. A separate Order follows.


Dated: December 16, 2025                              /s/
                                             Stephanie A. Gallagher
                                             United States District Judge