**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| STACEY JACKSON | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil Case No.: SAG-25-00492 |
| v. | * | |
| | * | |
| VALERIE E. BROWN, *et al.* | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM OPINION</u>

Plaintiff Stacey Jackson ("Plaintiff") brings this action against Valerie E. Brown, Eric Hemmendinger, and Lindsey White (collectively, "the Outside Counsel Defendants"); as well as Exelon Business Services Company, LLC; Exelon Corporation; and Baltimore Gas and Electric Company (collectively, "the Exelon Companies"); and Clifford Glover and Mary Cate Gordon (together with the Exelon Companies, "the Exelon Defendants," and all together "Defendants") for claims arising out of alleged employment-related retaliation. ECF 69. After this Court dismissed most of the claims in her Amended Complaint, *see* ECF 57, 58, Plaintiff filed a Second Amended Complaint ("SAC"), ECF 69. The Outside Counsel Defendants jointly filed a motion to dismiss the SAC, ECF 72, and the Exelon Defendants jointly filed a partial motion to dismiss, ECF 73. Plaintiff opposed these motions, ECF 74, 75, and Defendants filed replies, ECF 77, 79. This Court has reviewed the filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons explained below, the Outside Counsel Defendants' motion to dismiss and the Exelon Defendants' partial motion to dismiss will be granted.

## I.   BACKGROUND

The following facts are derived from the SAC, ECF 69, and are assumed to be true for purposes of these motions. Factual allegations made for the first time in the SAC are specifically described as such.

Plaintiff was an employee of the Exelon Companies from 2019 until 2022. *Id.* ¶¶ 3, 22–23. Throughout her employment with the Exelon Companies, she witnessed and experienced race-based disparate treatment and harassment. *Id.* ¶ 31. Because of the discrimination and harassment, she developed several health conditions that led her to resign in 2022. *Id.* ¶ 38.

Following her resignation, Plaintiff retained attorneys Tonya Baña and Jonathan Gross to represent her in connection with potential claims against the Exelon Companies arising out of her employment. *Id.* ¶ 42. Plaintiff subsequently filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") against the Exelon Companies. *Id.* ¶ 43. Plaintiff and the Exelon Companies later resolved her potential claims by entering into a confidential settlement agreement. *Id.* ¶ 44. The settlement agreement recognized that cases related to Plaintiff's employment may arise and required Plaintiff "to cooperate in providing the company documents and information necessary to assist in the defense or prosecution of any such case, including telephone calls and meetings with the Company's counsel." *Id.* ¶ 45. The Exelon Companies must compensate Plaintiff for any time spent "assisting in the defense or prosecution of any such case." *Id.*

In September, 2023, Plaintiff was served with a subpoena to attend a deposition in *Kevin Alston, et al. v. Baltimore Gas & Electric Co., et al.*, a discrimination case filed by former employees against the Exelon Companies. *Id.* ¶ 46. Approximately one week later, William Kennedy, an attorney who represents an Exelon subsidiary in *Robert Montgomery v. Atlantic City*

*Electric Co., et al.*, a wrongful discharge case, contacted Plaintiff. *Id.* ¶ 47. He informed her that the plaintiff's attorney in that case had requested to take her deposition and that he "would like to work with her to prepare for and attend the deposition." *Id.* Shortly thereafter, Plaintiff met with Mr. Kennedy and an associate, Mr. Kennedy provided her with documents to review before her deposition, and Plaintiff directed Mr. Kennedy to where he could locate other documents relevant to the case. *Id.* ¶ 48.

On September 21, 2023, Plaintiff was deposed in *Alston*. *Id.* ¶ 49. Ms. Baña, as counsel for the *Alston* plaintiffs, conducted the deposition, and Mr. Gross represented Plaintiff during it. *Id.* Ms. White, outside counsel for the Exelon Companies, and Mr. Glover, Assistant General Counsel for Labor & Employment, represented the Exelon Companies. *Id.* ¶¶ 6–7, 49. Before beginning questioning, Ms. Baña made a statement on the record that she had previously represented Plaintiff and had a continuing obligation to maintain the confidentiality of her attorney-client communications with Plaintiff. *Id.* ¶ 50. During the deposition, Plaintiff asserted the attorney-client privilege to decline to answer questions that would require her to reveal her communications with Ms. Baña, and she complied with Ms. White's instructions to refrain from answering questions that would require her to reveal privileged information of the Exelon Companies. *Id.* ¶¶ 51, 53. Plaintiff's testimony during the deposition largely corroborated the *Alston* plaintiffs' discrimination claims, and Plaintiff testified specifically about both investigations that she had conducted as an employee and discrimination and retaliation that she had experienced personally. *Id.* ¶¶ 54–55.

Following Plaintiff's deposition, Ms. White had several communications with Mr. Gross inquiring about the scope of the Exelon Companies' privileged information that Plaintiff may have

disclosed in her communications with Ms. Baña. *Id.* ¶¶ 60–61. The SAC additionally alleges that these communications began in late October. *Id.* ¶ 60.

Shortly thereafter, the Exelon Companies filed a motion to disqualify Ms. Baña from representing the *Alston* plaintiffs based on Plaintiff's purported disclosure to her of the Exelon Companies' privileged information. *Id.* ¶ 72. They later filed a reply making the same arguments. *Id.* ¶ 84. The SAC additionally alleges that during Plaintiff's employment with the Exelon Companies, she entered into a confidentiality agreement that expressly authorized her to disclose privileged information for the purpose of obtaining legal advice. *Id.* ¶ 70.

Around this same time, Plaintiff made a demand for payment for her time spent assisting Mr. Kennedy in the *Montgomery* matter. *Id.* ¶ 89. Mr. Kennedy informed her that the Exelon Companies refused to pay her until after she was deposed and would not pay her if the *Montgomery* plaintiff had to issue a subpoena for her deposition. *Id.* ¶¶ 90, 92. The settlement agreement does not provide for such preconditions for payment. *Id.* ¶ 93. The SAC additionally alleges that the Exelon Companies ordinarily make such payments for aiding in defense within thirty days. *Id.* ¶ 91.

In February, 2024, Ms. Brown, as outside counsel for the Exelon Companies, sent Mr. Gross a letter alleging that Plaintiff had improperly retained the Exelon Companies' documents by forwarding them to her personal email accounts and had lied in connection with doing so during her *Alston* deposition. *Id.* ¶¶ 4, 94–100. The letter requested that Plaintiff permit access to her personal electronic devices. *Id.* ¶ 100. Plaintiff had permission to forward documents to her personal email accounts as a reasonable accommodation for her glaucoma. *Id.* ¶ 99. The SAC additionally explains that this accommodation allowed her to print documents and limit her time

looking at a screen and alleges that Defendants never reported any alleged perjury during her deposition to law enforcement. *Id.* ¶¶ 100, 112.

Later that month, the Exelon Companies filed correspondence with the court in another matter, falsely alleging that Ms. Baña had admitted that she had received privileged documents from Plaintiff *Id.* ¶ 127. The Exelon Companies retracted these allegations after Ms. Baña disproved them. *Id.* ¶ 132. The SAC additionally alleges that Ms. Gordon knew about the correspondence, which had been filed by an attorney who is not a party to this action. *Id.* ¶ 137.

In March, 2024, Ms. White had a letter and a subpoena to testify at a hearing and produce documents in *Alston* served upon Plaintiff personally. *Id.* ¶ 141. The SAC additionally alleges that the letter directed Plaintiff to review the subpoena and bring the documents specified in the subpoena to the hearing and advised that providing Ms. White with those documents in advance of the hearing would "streamline the hearing." *Id.* ¶ 145. The SAC also alleges that Plaintiff informed Mr. Gross that she had received the subpoena and letter. *Id.* ¶ 144.

The following month, the Exelon Companies filed several papers in *Alston* alleging that Plaintiff had improperly forwarded documents to her personal email accounts. *Id.* ¶¶ 159–60. The SAC additionally alleges that these filings asserted that the Exelon Companies "may have claims" against Plaintiff for breaching her employee confidentiality agreement and that they have never pursued any such claims. *Id.* ¶¶ 160, 165.

Plaintiff retained Ms. Baña to represent her during her deposition in the *Montgomery* matter. *Id.* ¶ 176. In June, 2024, Mr. Kennedy filed an *ex parte* motion to disqualify Ms. Baña from doing so. *Id.* ¶ 180. He filed the motion in New Jersey state court, which lacked jurisdiction over the Maryland deposition subpoena. *Id.* ¶¶ 178, 180. The presiding judge ultimately allowed Ms. Baña to represent Plaintiff during her *Montgomery* deposition. *Id.* ¶ 188. The SAC additionally

alleges that Ms. Gordon either knew or should have known that Mr. Kennedy filed this motion. *Id.* ¶ 197.

Following her deposition in *Montgomery*, Plaintiff invoiced the Exelon Companies for all of the time that she had spent on the case. *Id.* ¶ 189. The Exelon Companies paid her for her time spent preparing for her deposition but refused to pay her for her time spent attending the deposition. *Id.* ¶ 190. The SAC additionally alleges that the Exelon Companies delayed her payment for her preparation time. *Id.*

In July, 2024, Ms. White and Ms. Brown filed a motion to disqualify Plaintiff's current counsel from representing her in an appeal stemming from the *Alston* matter. *Id.* ¶ 198. This Court previously took judicial notice of both the Appellate Court of Maryland's decision in that appeal and the underlying trial court decision, which related to the Exelon Companies' subpoena of Plaintiff to testify regarding her communications with Ms. Baña in *Alston*. *See* ECF 57 at 11. The Appellate Court of Maryland affirmed the trial court's decision ordering an evidentiary hearing and permitting the Exelon Companies to subpoena Plaintiff and Ms. Baña to testify regarding any disclosure of confidential information. ECF 25-8; ECF 42-1. It also denied the motion to disqualify Plaintiff's current counsel. ECF 69 ¶ 199. The SAC additionally alleges that the motion was filed four months after Defendants learned that Plaintiff's current counsel represented her and that it featured several typographical errors and incorrect citations, which resulted in the Appellate Court of Maryland admonishing counsel for the Exelon Companies to ensure its citations are accurate in the future. *Id.* ¶¶ 198–200.

In July, 2024, Plaintiff filed a second charge of discrimination with the EEOC against the Exelon Companies. *Id.* ¶ 211. The following month, Ms. White sent Ms. Baña a letter regarding the new charge and reiterated that the Exelon Companies perceived her representation of Plaintiff

6

as improper. *Id.* ¶ 212. Then in September, 2024, the Exelon Companies filed a position statement in response to the charge that included allegations that Plaintiff had improperly retained privileged information. *Id.* ¶ 213.

Plaintiff brings three claims in the SAC. In Count I, she alleges a Title VII retaliation claim against the Exelon Companies. *Id.* ¶¶ 215–21. In Count II, she alleges a Maryland Fair Employment Practices Act retaliation claim against all Defendants. *Id.* ¶¶ 222–28. And in Count III, she alleges a retaliation claim pursuant to 42 U.S.C. § 1981 against all Defendants. *Id.* ¶¶ 229–35.

## II.   LEGAL STANDARD

A defendant is permitted to test the legal sufficiency of a complaint by way of a motion to dismiss. *See, e.g.*, *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). But if a complaint provides no more than "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555.

### III.  DISCUSSION

A Title VII retaliation claim requires a plaintiff to show that (1) she engaged in protected activity, (2) her employer took an adverse employment action against her, and (3) a causal link between those two events exists. *Savage v. Maryland*, 896 F.3d 260, 276 (4th Cir. 2018). These elements are "identical" to the elements of a § 1981 retaliation claim, *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 217 (4th Cir. 2016), and the elements of a Maryland Fair Employment Practices Act retaliation claim, *Campbell v. Becton, Dickinson & Co.*, Civ. No. 1:22-cv-03043-ELH, 2024 WL 1299354, at *32 (D. Md. Mar. 27, 2024). To constitute adverse action, the employer's actions must "be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).

In this Court's earlier Memorandum Opinion, it dismissed Plaintiff's claims to the extent that they were based on "litigation-related conduct" but allowed claims against the Exelon Companies to proceed to the extent that they were based on the failure to compensate Plaintiff pursuant to the settlement agreement.[1] ECF 57 at 13. Specifically, this Court concluded that none of the litigation-related conduct alleged in the complaint could constitute adverse action. *See id.* at 9–10 (citing *United States v. N.Y.C. Transit Auth.*, 97 F.3d 672, 677 (2d Cir. 1996) ("Reasonable defensive measures do not violate the anti-retaliation provisions of Title VII, even though such steps are adverse . . . ."); and *Steffes v. Stepan Co.*, 144 F.3d 1070, 1075 (7th Cir. 1998) (explaining

---

[1] The Exelon Companies do not challenge those claims in their current partial motion to dismiss.

that court rules exist to regulate improper litigation conduct such that "it will be the rare case in which conduct occurring within the scope of litigation constitutes retaliation prohibited by [Title VII and related] statutes.")). Defendants now argue that the litigation-related conduct alleged in the SAC still fails to support any of Plaintiff's retaliation claims.

This Court initially notes that notwithstanding the addition of over one hundred paragraphs, the SAC provides very few new factual allegations. Instead, most of the additional paragraphs constitute legal argument. Indeed, Plaintiff's oppositions to the motions to dismiss focus not on any new factual allegations, but rather on what standard this Court should apply to evaluate her allegations. Specifically, Plaintiff now urges this Court to apply the standard articulated in *Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731 (1983) and *Darveau v. Detecon, Inc.*, 515 F.3d 334 (4th Cir. 2008).

In *Bill Johnson's*, the Supreme Court concluded that bringing a lawsuit lacking a reasonable basis and motivated by retaliatory intent constituted an unfair labor practice under the National Labor Relations Act. 461 U.S. at 735, 744. And in *Darveau*, the Fourth Circuit applied *Bill Johnson's* and concluded that a counterclaim could constitute unlawful retaliation under the Fair Labor Standards Act if the defendant files it with a retaliatory motive and without a reasonable basis in law or fact. 515 F.3d at 337, 341, 343.

This Court views this standard as consistent with the standard that it applied in its earlier Memorandum Opinion. The *Bill Johnson's* standard merely reflects a more specific formulation of "the rare case" in which litigation conduct will constitute unlawful retaliation. Moreover, this Court reaches the same conclusion applying the *Bill Johnson's* standard because the SAC fails to allege that Defendants engaged in any of the litigation-related conduct as a means to retaliate against Plaintiff for her protected deposition testimony. Rather, as this Court noted in its earlier

9

Memorandum Opinion, almost all of the conduct constituted Defendants' efforts to investigate Plaintiff's alleged retention and disclosure of privileged information to Ms. Baña and disqualify Ms. Baña based on that alleged disclosure.[2] Even though Plaintiff has now alleged that her employee confidentiality agreement expressly authorized her to make such disclosures to Ms. Baña, the Exelon Companies still had a reasonable interest in precluding an attorney who possessed their privileged information from acting as opposing counsel in other matters. The only reasonable inference to draw from this conduct is that Defendants engaged in it in furtherance of that interest, rather than in furtherance of retaliating against Plaintiff. Even if Defendants at times used improper means, such as Ms. Gordon's alleged knowledge that another attorney had filed a motion in an improper forum, none of those improper means appear calculated to harm Plaintiff. Moreover, as this Court determined in its previous Memorandum Opinion, the state court decisions ordering an evidentiary hearing and permitting the Exelon Companies to subpoena Plaintiff and Ms. Baña to testify regarding any disclosure of confidential information indicate that Defendants' efforts at least had a reasonable basis and were not frivolous.

The only remaining conduct without any apparent relation to the alleged retention and disclosure of privileged information is the attachment of the letter to the subpoena served on Plaintiff in March, 2024. This Court cannot conclude that the attachment to a properly served subpoena of a seemingly standard letter explaining the subpoena is harmful to the point that it could well dissuade a reasonable worker from making or supporting a charge of discrimination.

---

[2] This Court considers Defendants' efforts to disqualify Plaintiff's current counsel in the same fashion. Although the SAC removes these allegations, the Amended Complaint had specified that the motion to disqualify current counsel had alleged that current counsel's representation constituted a conflict of interest. ECF 29 ¶ 102.

10

Because none of the litigation-related conduct alleged in the SAC constitutes adverse action that may support Plaintiff's retaliation claims, the claims based on those allegations must be dismissed. Accordingly, this Court will dismiss all of the claims against the Outside Counsel Defendants, Mr. Glover, and Ms. Gordon. It will also dismiss the claims against the Exelon Companies except as to the allegations, unchallenged by the current partial motion to dismiss, concerning failure to compensate Plaintiff pursuant to the settlement agreement. Because Plaintiff has now had three opportunities to plead these claims, and the lack of additional facts included in her most recent attempt indicates that it is unlikely she possesses facts that could sufficiently plead them, the claims will be dismissed with prejudice.

## IV.  CONCLUSION

For the reasons stated above, the Outside Counsel Defendants' motion to dismiss, ECF 72, and the Exelon Defendants' partial motion to dismiss, ECF 73, will be granted. A separate Order follows.


Dated: May 21, 2026                                        _____/s/_____
                                                            Stephanie A. Gallagher
                                                            United States District Judge