**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| **STACEY JACKSON** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil Case No.: SAG-25-00492** |
| **v.** | * | |
| | * | |
| **VALERIE E. BROWN,** *et al.* | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \*

<u>**MEMORANDUM OPINION**</u>

Plaintiff Stacey Jackson ("Plaintiff") brought this action against Exelon Business Services Company, LLC; Exelon Corporation; and Baltimore Gas and Electric Company (collectively, "the Exelon Companies"); as well as Valerie E. Brown, Eric Hemmendinger, Lindsey White, Clifford Glover, and Mary Cate Gordon (together with the Exelon Companies, "Defendants") for claims arising out of alleged employment-related retaliation. ECF 69. This Court previously granted Defendants' motions to dismiss some of the claims alleged in Plaintiff's Second Amendment Complaint ("SAC"). ECF 80. Plaintiff has now filed a Motion for Reconsideration of that decision, ECF 83, which Defendants jointly opposed, ECF 84. Plaintiff then filed a reply. ECF 86. This Court has reviewed the filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons explained below, the Motion for Reconsideration will be denied.

### I.    BACKGROUND

The following facts are derived from the SAC, ECF 69, and are assumed to be true for the purpose of this motion.

Plaintiff was an employee of the Exelon Companies from 2019 until 2022. *Id.* ¶¶ 3, 22–23. Throughout her employment with the Exelon Companies, she witnessed and experienced race-

based disparate treatment and harassment. *Id.* ¶ 31. Because of the discrimination and harassment, she developed several health conditions that led her to resign in 2022. *Id.* ¶ 38.

Following her resignation, Plaintiff retained attorneys Tonya Baña and Jonathan Gross to represent her in connection with potential claims against the Exelon Companies arising out of her employment. *Id.* ¶ 42. Plaintiff subsequently filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") against the Exelon Companies. *Id.* ¶ 43. Plaintiff and the Exelon Companies later resolved her potential claims by entering into a confidential settlement agreement. *Id.* ¶ 44. The settlement agreement recognized that cases related to Plaintiff's employment may arise and required Plaintiff "to cooperate in providing the company documents and information necessary to assist in the defense or prosecution of any such case, including telephone calls and meetings with the Company's counsel." *Id.* ¶ 45. The Exelon Companies must compensate Plaintiff for any time spent "assisting in the defense or prosecution of any such case." *Id.*

In September, 2023, Plaintiff was served with a subpoena to attend a deposition in *Kevin Alston, et al. v. Baltimore Gas & Electric Co., et al.*, a discrimination case filed by former employees against the Exelon Companies. *Id.* ¶ 46. Approximately one week later, William Kennedy, an attorney who represents an Exelon subsidiary in *Robert Montgomery v. Atlantic City Electric Co., et al.*, a wrongful discharge case, contacted Plaintiff. *Id.* ¶ 47. He informed her that the plaintiff's attorney in that case had requested to take her deposition and that he "would like to work with her to prepare for and attend the deposition." *Id.* Shortly thereafter, Plaintiff met with Mr. Kennedy and an associate, Mr. Kennedy provided her with documents to review before her deposition, and Plaintiff directed Mr. Kennedy to where he could locate other documents relevant to the case. *Id.* ¶ 48.

On September 21, 2023, Plaintiff was deposed in *Alston*. *Id.* ¶ 49. Ms. Baña, as counsel for the *Alston* plaintiffs, conducted the deposition, and Mr. Gross represented Plaintiff during it. *Id.* Ms. White, outside counsel for the Exelon Companies, and Mr. Glover, Assistant General Counsel for Labor & Employment, represented the Exelon Companies. *Id.* ¶¶ 6–7, 49. Before beginning questioning, Ms. Baña made a statement on the record that she had previously represented Plaintiff and had a continuing obligation to maintain the confidentiality of her attorney-client communications with Plaintiff. *Id.* ¶ 50. During the deposition, Plaintiff asserted the attorney-client privilege to decline to answer questions that would require her to reveal her communications with Ms. Baña, and she complied with Ms. White's instructions to refrain from answering questions that would require her to reveal privileged information of the Exelon Companies. *Id.* ¶¶ 51, 53. Plaintiff's testimony during the deposition largely corroborated the *Alston* plaintiffs' discrimination claims, and Plaintiff testified specifically about both investigations that she had conducted as an employee and discrimination and retaliation that she had experienced personally. *Id.* ¶¶ 54–55.

Beginning in late October of 2023, Ms. White had several communications with Mr. Gross inquiring about the scope of the Exelon Companies' privileged information that Plaintiff may have disclosed in her communications with Ms. Baña. *Id.* ¶¶ 60–61.

Shortly thereafter, the Exelon Companies filed a motion to disqualify Ms. Baña from representing the *Alston* plaintiffs based on Plaintiff's purported disclosure to her of the Exelon Companies' privileged information. *Id.* ¶ 72. They later filed a reply making the same arguments. *Id.* ¶ 84. During Plaintiff's employment with the Exelon Companies, she entered into a confidentiality agreement that expressly authorized her to disclose privileged information for the purpose of obtaining legal advice. *Id.* ¶ 70.

Around this same time, Plaintiff made a demand for payment for her time spent assisting Mr. Kennedy in the *Montgomery* matter. *Id.* ¶ 89. Mr. Kennedy informed her that the Exelon Companies refused to pay her until after she was deposed and would not pay her if the *Montgomery* plaintiff had to issue a subpoena for her deposition. *Id.* ¶¶ 90, 92. The settlement agreement does not provide for such preconditions for payment. *Id.* ¶ 93. The Exelon Companies ordinarily make such payments for aiding in defense within thirty days. *Id.* ¶ 91.

In February, 2024, Ms. Brown, as outside counsel for the Exelon Companies, sent Mr. Gross a letter alleging that Plaintiff had improperly retained the Exelon Companies' documents by forwarding them to her personal email accounts and had lied in connection with doing so during her *Alston* deposition. *Id.* ¶¶ 4, 94–100. The letter requested that Plaintiff permit access to her personal electronic devices. *Id.* ¶ 100. Plaintiff had permission to forward documents to her personal email accounts as a reasonable accommodation for her glaucoma. *Id.* ¶ 99. Defendants never reported any alleged perjury during her deposition to law enforcement. *Id.* ¶¶ 100, 112.

Later that month, another attorney for the Exelon Companies filed correspondence with the court in another matter, falsely alleging that Ms. Baña had admitted that she had received privileged documents from Plaintiff *Id.* ¶ 127. The Exelon Companies retracted these allegations after Ms. Baña disproved them. *Id.* ¶ 132. Plaintiff alleges that Ms. Gordon knew about the correspondence. *Id.* ¶ 137.

In March, 2024, Ms. White had a letter and a subpoena to testify at a hearing and produce documents in *Alston* served upon Plaintiff personally. *Id.* ¶ 141. The letter directed Plaintiff to review the subpoena and bring the documents specified in the subpoena to the hearing and advised that providing Ms. White with those documents in advance of the hearing would "streamline the hearing." *Id.* ¶ 145.

The following month, the Exelon Companies filed several papers in *Alston* alleging that Plaintiff had improperly forwarded documents to her personal email accounts. *Id.* ¶¶ 159–60. These filings asserted that the Exelon Companies "may have claims" against Plaintiff for breaching her employee confidentiality agreement, although they have never pursued any such claims. *Id.* ¶¶ 160, 165.

Plaintiff retained Ms. Baña to represent her during her deposition in the *Montgomery* matter. *Id.* ¶ 176. In June, 2024, Mr. Kennedy filed an *ex parte* motion to disqualify Ms. Baña from doing so. *Id.* ¶ 180. He filed the motion in New Jersey state court, which lacked jurisdiction over the Maryland deposition subpoena. *Id.* ¶¶ 178, 180. The presiding judge ultimately allowed Ms. Baña to represent Plaintiff during her *Montgomery* deposition. *Id.* ¶ 188. Plaintiff alleges that Ms. Gordon either knew or should have known that Mr. Kennedy filed this motion. *Id.* ¶ 197.

Following her deposition in *Montgomery*, Plaintiff invoiced the Exelon Companies for all of the time that she had spent on the case. *Id.* ¶ 189. After a delay, the Exelon Companies paid her for her time spent preparing for her deposition but refused to pay her for her time spent attending the deposition. *Id.* ¶ 190.

In July, 2024, Ms. White and Ms. Brown filed a motion to disqualify Plaintiff's current counsel from representing her in an appeal stemming from the *Alston* matter. *Id.* ¶ 198. The court denied this motion and admonished counsel for the Exelon Companies for typographical errors and incorrect citations in the motion. *Id.* ¶¶ 199–201.

In July, 2024, Plaintiff filed a second charge of discrimination with the EEOC against the Exelon Companies. *Id.* ¶ 211. The following month, Ms. White sent Ms. Baña a letter regarding the new charge and reiterated that the Exelon Companies perceived her representation of Plaintiff as improper. *Id.* ¶ 212. Then in September, 2024, the Exelon Companies filed a position statement

in response to the charge that included allegations that Plaintiff had improperly retained privileged information. *Id.* ¶ 213. Plaintiff then brough the instant claims for retaliation pursuant to Title VII, the Maryland Fair Employment Practices Act, and 42 U.S.C. § 1981. *Id.* ¶¶ 215–35.

Following motions to dismiss Plaintiff's first amended complaint, this Court permitted claims against the Exelon Companies to proceed to the extent that they were based on the failure to compensate Plaintiff pursuant to the settlement agreement but otherwise dismissed her claims. ECF 57 at 13. After Plaintiff filed her SAC and Defendants filed a second round of motions to dismiss, this Court reached the same conclusion and dismissed with prejudice Plaintiff's claims except those against the Exelon Companies based on the failure to compensate her. ECF 80 at 8, 11. Plaintiff now asks this Court to reconsider that decision.

## II.   LEGAL STANDARD

Interlocutory orders, or orders that do not involve final judgment as to all parties and all claims in a case, "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). The decision to revise an interlocutory order lies within the discretion of the district court. *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003). This discretion, however, is not "limitless," and the Fourth Circuit has "cabined revision pursuant to Rule 54(b) by treating interlocutory rulings as law of the case." *U.S. Tobacco Coop. Inc. v. Big. S. Wholesale of Va., LLC*, 899 F.3d 236, 256–57 (4th Cir. 2018) (quoting *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017)). Accordingly, a district court may revise an interlocutory order under the same circumstances as it may depart from the law of the case: (1) a subsequent proceeding that reveals substantially different evidence, (2) an intervening change in the applicable law, or (3) "clear error causing manifest injustice." *Id.* at 257 (quoting *Carlson*, 856 F.3d at 325).

### III.  DISCUSSION

Although Plaintiff does not cite the reconsideration standard or identify which ground or grounds that she believes apply, her arguments appear to rest on the "clear error causing manifest injustice" ground. None of her arguments, however, establish that this Court's decision constituted clear error causing manifest injustice.

### A.  Arguments I and II

Plaintiff's first set of arguments contend that this Court applied an intent, or "calculated to harm," requirement to her retaliation claims that was "directly contrary to binding Fourth Circuit and Supreme Court authority." ECF 83-1 at 8–9. That intent requirement, however, was derived from a Supreme Court and Fourth Circuit standard that Plaintiff herself asked this Court to apply.

In deciding the first round of motions to dismiss, this Court concluded that most of the conduct alleged in the complaint was litigation related and could not constitute actionable retaliation. *See* ECF 57 at 9–10 (citing *United States v. N.Y.C. Transit Auth.*, 97 F.3d 672, 677 (2d Cir. 1996) ("Reasonable defensive measures do not violate the anti-retaliation provisions of Title VII, even though such steps are adverse . . . ."); and *Steffes v. Stepan Co.*, 144 F.3d 1070, 1075 (7th Cir. 1998) (explaining that court rules exist to regulate improper litigation conduct such that "it will be the rare case in which conduct occurring within the scope of litigation constitutes retaliation prohibited by [Title VII and related] statutes.")). In opposition to the second round of motions to dismiss, Plaintiff argued that the standard from *Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731 (1983), and *Darveau v. Detecon, Inc.*, 515 F.3d 334 (4th Cir. 2008), was the correct standard to apply. Under *Bill Johnson's*, bringing a lawsuit lacking a reasonable basis and *motivated by retaliatory intent* may constitute an unfair labor practice under the National Labor Relations Act. 461 U.S. at 735, 744. And under *Darveau*, bringing a counterclaim *based on*

*retaliatory motive* and without a reasonable basis in law or fact may constitute unlawful retaliation under the Fair Labor Standards Act. 515 F.3d at 337, 341, 343. This Court viewed the *Bill Johnson's*/*Darveau* standard as largely consistent with the standard that it had applied in its earlier decision. ECF 80 at 9. It then reached the same conclusion applying the *Bill Johnson's*/*Darveau* standard and did so in part because Plaintiff had not adequately alleged that Defendants had engaged in the litigation-related conduct with retaliatory intent, as required under *Bill Johnson's* and *Darveau*. *Id.* at 9–10.

Thus, this Court analyzed retaliatory intent because Plaintiff asked that it apply Supreme Court and Fourth Circuit case law delineating retaliatory intent as part of the governing standard. Indeed, in her previous briefing, Plaintiff had articulated the standard that she believed should apply in such terms. *See, e.g.*, ECF 74 at 24 ("Where litigation conduct implicates the right to petition—whether through a lawsuit, counterclaim, motion, or other litigation activity—*Bill Johnson's* supplies the governing standard. The question is not the specific procedural vehicle, but whether the conduct lacked a reasonable basis in law or fact and was pursued with retaliatory motive.").

Tellingly, Plaintiff cites neither *Bill Johnson's* nor *Darveau* in her instant motion. Plaintiff may disagree with this Court's analysis under those cases, but that analysis did not invent a requirement divorced from Supreme Court and Fourth Circuit case law. This argument fails.

### B. Arguments III and IV

Plaintiff next argues that this Court impermissibly drew inferences in favor of Defendants. In particular, Plaintiff contends that this Court could not infer that nearly all of the litigation-related conduct alleged in the complaint was caused by concern regarding retention and disclosure of the

Exelon Companies' privileged information, rather than by Plaintiff's testimony regarding discrimination.

Plaintiff cites *Woods v. City of Greensboro*, 855 F.3d 639, 649 (4th Cir. 2017), and *Barbour v. Garland*, 105 F.4th 579, 599 (4th Cir. 2024), for the proposition that, at the pleading stage, "an obvious alternative explanation" renders a plaintiff's claim of discrimination or retaliation implausible only if it is "so obviously an irrefutably sound and unambiguously nondiscriminatory and non-pretextual explanation." Plaintiff focuses on the "irrefutably sound" requirement and argues that an explanation that entailed the use of improper means cannot be "irrefutably sound."

This argument is unpersuasive. Nothing in *Woods* or *Barbour* suggests that the use of improper means *necessarily* precludes an obvious alternative explanation. As those cases note, the question that the court must answer is whether the obvious alternative explanation renders an inference of discrimination or retaliation implausible. *Woods*, 855 F.3d at 649; *Barbour*, 105 F.4th at 599. Such a question is necessarily context dependent.

As this Court noted in its decision on the second round of motions to dismiss, all of the litigation-related conduct, other than the accompaniment of the letter with the serving of the subpoena (addressed separately below), related to investigation into and litigation regarding Plaintiff's alleged retention and disclosure of the Exelon Companies' privileged information. And as this Court further noted, regardless of whether Plaintiff's confidentiality agreement authorized her to make such disclosures to her attorneys, the Exelon Companies still had a reasonable interest in precluding an attorney who possessed their privileged information from acting as opposing counsel in other matters. When all of the conduct relating to the alleged retention and disclosure is considered in totality, the only reasonable inference that this Court can draw is that Defendants

engaged in that conduct for the purpose of rectifying the alleged retention and disclosure, rather than retaliating against Plaintiff for testifying about discrimination.

Although the use of improper means might in certain circumstances defeat an obvious alternative explanation, this Court cannot so find here. Nothing about the improper means that Defendants allegedly used makes it any more plausible that Plaintiff's testimony regarding discrimination caused the use of such improper means. For example, Plaintiff alleged that Ms. Gordon knew or should have known that another attorney, whom Plaintiff did not name as a defendant in this case, had filed a motion to disqualify Ms. Baña in a court that lacked jurisdiction. ECF 69 ¶¶ 176–82. Specifically, the attorney filed a motion to disqualify Ms. Baña from representing Plaintiff during her deposition in a case that was pending in New Jersey. *Id.* ¶ 176. The attorney filed the motion in New Jersey, but because the deposition was scheduled to occur in Maryland, only Maryland state courts had jurisdiction over a motion concerning the deposition. *Id.* ¶¶ 180–81. There does not appear to be any dispute that the law required the attorney to file the motion in Maryland, but nothing about that fact makes it any more plausible to infer a causal link between Ms. Gordon's failure to ensure that the other attorney filed the motion in Maryland instead of New Jersey and Plaintiff's testimony regarding discrimination nine months earlier. Plaintiff has failed to show clear error causing manifest injustice on this basis.

## C. Argument V

Plaintiff next argues that this Court misconstrued state court decisions involving a motion to disqualify Ms. Baña and that that misreading was material to this Court's decision. In its decisions on both rounds of motions to dismiss, this Court took judicial notice of (1) a decision by the Circuit Court for Baltimore City and (2) the Appellate Court of Maryland's decision affirming the Circuit Court's decision. ECF 57 at 11; ECF 80 at 6. In the case underlying those decisions,

10

the Exelon Companies had filed a motion to disqualify Ms. Baña from representing the opposing parties based on Plaintiff's alleged disclosure to her of the Exelon Companies' privileged information. ECF 42-1 at 2. After the Exelon Companies subpoenaed Plaintiff and Ms. Baña to testify about the alleged disclosure, the trial court ordered an evidentiary hearing and denied Plaintiff's and Ms. Baña's motions to quash their subpoenas and for protective orders, which were premised on attorney-client privilege. ECF 25-8. The appellate court affirmed, concluding that the trial court had not erred in ordering the evidentiary hearing or denying the motions to quash the subpoenas and for protective orders. ECF 42-1 at 3.

Plaintiff argues that this Court materially misconstrued these decisions by describing them as "permitting the Exelon Companies to subpoena Plaintiff and Ms. Baña to testify regarding any disclosure of confidential information." ECF 83-1 at 23 (quoting ECF 80 at 10). According to Plaintiff, the denial of a motion to quash a subpoena is not affirmative authorization to compel testimony; rather, "it leaves a subpoena in place subject to later rulings." *Id.* In this Court's view, this distinction splits hairs. If the denial of a motion to quash "leaves a subpoena in place," it necessarily permits the subpoena, even if, as with any subpoena, the court retains authority to restrict the resulting testimony. Plaintiff appears to argue that this Court should not have suggested that the state courts had definitively rejected her assertion of attorney-client privilege. This Court did not intend to make any such suggestion. Indeed, this Court did not intend to make any point about Plaintiff's privilege claim. Rather, it intended to convey that the state courts had determined that further inquiry into the Exelon Companies' claim that Plaintiff had disclosed its privileged information to Ms. Baña was appropriate.

The appellate decision, which Plaintiff faults this Court for not quoting directly, makes this point clear:

11

> In filing their motions to quash and for a protective order, Appellants were seeking relief from having to give testimony and produce evidence concerning the information that Appellees were claiming was privileged. The court ultimately denied those motions and determined that an evidentiary hearing was needed to explore the information in question and to ascertain whether that information was in fact privileged.

ECF 42-1 at 10. As this Court previously explained, the Maryland court decisions provide some evidence that the Exelon Companies' inquiry into the alleged disclosure of its privileged information, the basis of its motion to disqualify Ms. Baña, was at least not frivolous, and consequently, not indicative of some other purpose, such as retaliation. Indeed, the appellate court expressly rejected Plaintiff's argument that the Exelon Companies had issued the subpoenas for an improper purpose. *See id.* at 22–23 ("Here, there is nothing in the record to suggest that Appellees used the subpoena for any purpose other than to compel Ms. Jackson and Ms. Baña to give testimony and produce documents."). This basis for reconsideration fails.

## D. Argument VI

Plaintiff next contends that this Court erred by concluding that the accompaniment of the letter with the service of a subpoena on Plaintiff could not support her retaliation claims. This Court had reasoned that the letter was not harmful to the point that it could well dissuade a reasonable worker from making or supporting a charge of discrimination. *See* ECF 80 at 10; *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006) (discussing this element of a retaliation claim).

Plaintiff did not attach the letter to her complaint, but as a document "integral to and explicitly relied on in the complaint" whose authenticity is not challenged, this Court may consider the letter itself. *See E.I. du Pont de Nemours*, 637 F.3d at 448 (quoting *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). The letter states:

Dear Ms. Jackson:

Enclosed please find a subpoena compelling you to attend and testify at an evidentiary hearing on April 4, 2024. Please review the subpoena and bring documents to the hearing as specified on the subpoena. Providing the documents to me in advance of the hearing will streamline the hearing. Your counsel may send responsive documents to my email address white@shawe.com.

Please have your counsel contact me with any questions.

ECF 72-2 at 2.

Plaintiff concedes that the subpoena itself was properly served, ECF 69 ¶ 142; she attributes retaliation only to the accompaniment of this letter with the subpoena. She argues that ethics rules prohibited Ms. White from corresponding directly with Plaintiff, a represented party. But the letter merely provided brief instructions regarding the accompanying subpoena, including instructions for Plaintiff's counsel to engage in any further contact on Plaintiff's behalf. Plaintiff has failed to demonstrate clear error in this Court's conclusion, as a matter of law, that this letter could not support her retaliation claims. Regardless of whether any ethics rule prohibited Ms. White from attaching such a letter to the subpoena, it simply is not plausible that the letter itself could well dissuade a reasonable worker from making or supporting a charge of discrimination. Furthermore, although Plaintiff argues that this Court should not have viewed this letter in isolation, but rather in totality with all of the other conduct alleged, such an analysis does not help Plaintiff. According to Plaintiff, she has alleged "a sustained, escalation campaign . . . of extrajudicial intimidation and coercion," *see* ECF 83-1 at 26, but this Court has already concluded that the remaining conduct did not reflect such a campaign. This basis for reconsideration also fails.

### E. Argument VII

Finally, Plaintiff argues that this Court could not dismiss claims "with prejudice" while allowing other claims to proceed. Plaintiff cites Federal Rule of Civil Procedure 54(b), which

provides that an order adjudicating some, but not all, of the claims in an action does not end the action as to any claims or parties and may be revised at any time before entry of final judgment. Thus, in the context of this case, this rule prevents Plaintiff from appealing the dismissal order before entry of final judgment but allows this Court to revise the dismissal order before that point, as Plaintiff has asked that it do through this motion for reconsideration. This Court fails to understand how this rule relates to and would prohibit a court from dismissing some claims with prejudice while allowing other claims to proceed, and Plaintiff cites no case law prohibiting such a practice.

Plaintiff further argues that the "with prejudice" designation unfairly deprives her of another opportunity to amend her claims. This Court discerns no unfairness. Plaintiff has had three opportunities to plead her claims. As this Court noted in its decision on the second round of motions to dismiss, notwithstanding the addition of over one hundred paragraphs, the SAC contained very few additional factual allegations, an indication that it is unlikely she possesses facts necessary to sufficiently plead her claims and therefore that another chance to amend could cure the defects. *See* ECF 80 at 9, 11. Moreover, this Court is not persuaded by Plaintiff's argument that she has not yet had an opportunity to plead in accordance with the "new" standard that this Court applied to the SAC. As described above, Plaintiff herself advanced that "new" standard, based on *Bill Johnson's* and *Darveau*, in seeking leave to file her SAC and in opposing the motions to dismiss it. Thus, she has had such an opportunity. Plaintiff has failed to show clear error causing manifest injustice on this basis as well.

## IV.  CONCLUSION

For the reasons stated above, the Motion for Reconsideration, ECF 83, is denied. A separate

Order follows.


Dated: July 27, 2026                                      /s/
                                              Stephanie A. Gallagher
                                              United States District Judge